Earle, J.,
delivered the opinion of the Court.
The lines of a separation between the injuries which are redressed by actions of trespass vi et ctrmis, and those which are redressed by actions on the case, are often so slightly defined as to be almost imperceptible. But it is oftener difficult to distinguish between injuries that are immediate and such as are consequential, than such as are committed with force, and such as are without force. The essential and invariable ground of separation between trespass and case,, is the force which is always necessary to sustain an action of trespass vi et armis, whether to the person or to the property.. That the evidence in this case would authorize a jury to give damages, may be conceded without deciding the question, for it is not every injury ex delicto that will sustain trespass: and the defendant may have been actuated by the worst motives without making himself liable in this form of action. "Every unlawful restraint of personal liberty is an imprisonment, whether accompanied by corporal touch or not — whether in a house, in a ship, or in the street. But force of some sort must be used, and it must be a detention against the will, and it is indispensable that these two circumstances should unite. The force may be exhibited in a variety of ways without actual assault or corporal touch — by locking a door after enticing one within, and refusing to open it for his departure; by setting sail or pushing off from shore, having one on *212 board, and refusing to allow Mm to go asbore ; or by detaining one on the highway by threats of personal violence if he departed. And it is equally essential that the person should be detained against his will; for if he voluntarily place himself in a situation where another may lawfully do that which has the effect of restraining liberty, especially if he refuse to depart when he may, he cannot complain that he is unlawfully imprisoned against his will. A sheriff’s officer goes to the house of A, on the evening of an entertainment, with a bail process against one of his guests, and enters, as he lawfully may, and makes the arrest, A, refusing to assist him, but offering no hinderanee; being unable to remove his prisoner, he chooses to remain until the close of the entertainment, expecting then to accomplish his purpose on the departure of the guests; but the prisoner being on a visit there, remains. The officer being informed that the doors are about to be closed, is requested to depart with his prisoner if he can take him, else without him; but he is unable to take, and refuses to go without him. If A, should lock his doors and retire to rest, could the officer complain of false imprisonment if A, should refuse to rise at a late hour of the night at his request, to open the door ? I should think not. If a man enters a tavern and continues there all night against the will of the landlord, it is a trespass — could he complain if the landlord shuts his door upon him ? The general rule is, that a trespass will not lie for a mere non-feasance; and it seems to follow from that proposition, that when an act has been done, in the first instance lawful in itself, it cannot be rendered unlawful ab initio, except by some positive act incompatible with the exercise of the legal right to do the first act. 20 John Rep. 429; 15 Ibid. 401. In the case made by the evidence, it does not appear that the plaintiff was carried from the shore against his will, but the reverse. The destination of the boat was known — the accustomed hour of departure was passed; the boat was in the act of getting under way; at that moment the plaintiff phose to go on board, to arrest a person on a bail process, evidently under a mistaken impression as to the extent of his authority; and seeing the boat leaving the wharf, he choses to remain. Here, then, there was no unlawful detention, according to the principles I have laid down: the defendant was in the discharge of his known *213 and accustomed duty, and therefore in the performance of a lawful act, and the plaintiff was not detained against his will. At what time did the false imprisonment commence ? After' the boat bad proceeded into the stream some distance from the wharf, the defendant came and proposed to the plaintiff to send him asbore with his prisoner, if be could take him, else to send him alone. The plaintiff refused to go unless the defendant would aid him in carrying his prisoner. It need not be repeated that this the defendant was not bound to do. It was his duty to interpose no obstacle to the arrest or removal of the prisoner, but rather to afford such facilities as be could to the service of legal process. This be seems to have done, and more could hardly have been expected. On the refusal of the plaintiff to go asbore the defendant proceeded on his voyage,- one on which the plaintiff knew the boat was in the act of departing when be went aboard. This was also the accustomed duty, the office of the defendant, and was therefore a lawful act.
If the defendant was not bound to aid in the arrest and removal of the prisoner, I do not perceive that be was bound either to delay his voyage, or put back his boat, to enable the plaintiff to procure assistance. When the boat bad arrived at the mouth of the harbor, near Sullivan’s Island, the plaintiff demanded to be put ashore, which the defendant then refused ; here commenced the detention of the plaintiff against his will. Was it unlawful? I think it cannot be so held; the defendant only proceeded on his voyage. His refusal to send the plaintiff asbore at that time, which would have delayed his progress and put him to trouble, was a mere non-feasance, which, if be bad been guilty of no trespass up to that time, did not render him a trespasser cib initio: it was not a positive act, incompatible with the legal exercise of the right to proceed from the wharf, the plaintiff being on board.
If the plaintiff, as the case was put to the jury, bad wilfully put off from the shore, to prevent assistance, and to aid the escape of Dickerson, be might, perhaps, be liable to the creditor of Dickerson. But I do not perceive how a connivance in the case of Dickerson can be united with a deliberate purpose of detaining the plaintiff and carrying him to Norfolk against bis will. The most effectual mode of aiding the escape of/ Dickerson, would seem to be to hasten the de *214 parture of Moses; besides, a deliberate purpose of carrying bim to Norfolk, cannot be reconciled with the offer to send him ashore: and, therefore, could not have existed at the time of his leaving the wharf, if .he did it ever so hastily. If the defendant exhibited an anxiety to aid the escape of Dickerson, and hastened to leave the wharf and get into the stream, to prevent the plaintiff from obtaining help, it was improper. The Court has striven to sustain the verdict, but can find no precedent of such an action. The principal authority cited by counsel from Blackstone, and referred to by Chitty, is this: “ Injuries to the person may be committed, 1st, by threats and menaces of bodily hurt, through fear of which, a man’s business is interrupted,” and cites Finch L. 202, Reg. 104. I have not been able to consult these last; I suppose it to be of actual personal detention from customary employment, by threats and putting in fear; and this comes up to what I have before said of the kind of force which may be used. But mere dicta in the old books sometimes mislead, and sometimes have ceased to be of authority. It is said in Viner, citing Brooks, “if a man says he will cut off my arm, it is an assault;” “ if a man says to me, that if I will not cease my suit which I have against him, be will beat me — this is an assault.” But it is well settled now, that no mere words whatsoever will constitute an assault. We cannot believe that the extensive mischiefs will ensue, in the administration of justice, which have been anticipated, should we set aside this verdict; such a conjecture of circumstances is not likely to occur again. The consequences have grown out of the mistake of the plaintiff) in supposing he had a right to call on bystanders to aid him in making the arrest. In like cases again, the sheriff’s officer will only have to take with him such a force of followers as will enable him to overcome opposition.
Whatever may be the effect, we cannot overthrow the settled rules of pleading, and obliterate the settled forms of action, to suit the exigency in a particular case, or to avoid the possible consequence of a particular decision.
The motion for a new trial is granted.